Statement of Facts.

FRANCIS GILLEN v. S. B. ROWLEY ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued April 4, 1890—Decided April 14, 1890.

In an action to recover for personal injuries charged to the defendants'
negligence, the plaintiff's testimony showing that, being about thirteen
years of age, he was employed by the defendants in a work neither
difficult nor dangerous, but was injured while voluntarily interfering
with a machine in the exclusive charge of another employee and un-
dertaking to do something not within the scope of his employment, it
was not error to direct a verdict for the defendants.

Before STERRETT, GREEN, CLARK, WILLIAMS and MITCH-
ELL, JJ.

No. 188 January Term 1890, Sup. Ct.; court below, No. 714
March Term 1888, C. P. No. 4.

On March 19, 1888, Francis Gillen, by his father and next
friend, Michael Gillen, brought trespass against Salmon B.
Rowley and Francis W. Kennedy, trading as the Hero Glass
Works, to recover damages for personal injuries alleged to
have been caused by the negligence of the defendants.   Issue.

At the trial on January 15, 1889, the testimony was to the
effect that the plaintiff, a boy thirteen years of age, was em-
ployed by the defendants, in their glass works, to pick out
from a box placed on the floor unworked tin caps used for the
covers of glass fruit jars, and to place the caps in a box upon
a table, so that they could be within reach of an employee
operating the finishing machine.   There was no evidence that
the plaintiff was directed or expected to operate the machine.
On June 29, 1883, while the operator was out of the room, and
the machine was at rest, the plaintiff attempted to remove a
cap which was caught in the machine, and as he was doing so
the machine started and brought the punch down upon his
hand, crushing the hand so that amputation was necessary.

On cross-examination, the plaintiff testified:

Q. In putting up caps, you took the caps out of one little

Statement of Facts.

box and put them in another box? A. Yes, sir. Q. When Joe Reilly took you into tl e room where the work was going on, what did he tell you to do? A. Just told me to work at that machine. Q. Pointed to the place for you to work? A. Yes, sir. . Q. What did he tell you to do? A. Nothing. Q. You said yesterday he told you to do something. He told you to pick up caps. A. No, sir; the other boy told me to do that. Q. The boy running the machine? A. Yes, sir. Q. Joe Reilly pointed to you where you were to work, and the boy working the machine told you to do what? A. Put caps in this box. Q. What kind of a box were you to take the caps out of? A. A large box. Q. Where did it stand? A. Right at the side of the machine. Q. The caps are those things shaped like a deep saucer? A. Yes, sir.

Q. What you were told to do was to take these caps out of a box which stood on the floor near the machine, lift them up and put them in a little box which stood on a shelf by the ma-chine? A. Yes, sir. Q. That was all? A. Yes, sir. Q. You were not asked to run the machine, were you? A. No, sir. Q. Where did the other boy stand who ran the machine? A. He sat on the side of the machine. Q. He had a stool and sat there? A. Yes, sir. Q. You were about three feet from him, were you not—two or three feet? A. I don't believe I was two or three feet from him; I can't exactly say. Q. About as far from me to this gentleman here? A. Yes, sir.

Q. There was a box on the floor, and you took the caps up from that box and put them in a box that stood beside the boy; then he took the caps out of the box, into which you had put them, and put them into a slot in the machine? A. Yes, sir. Q. How long did you do that? A. I can't exactly say how long. Q. Do you remember the name of the boy who ran the machine? A. No, sir; it was a small boy, about the size I was then. Q. He got up and went away? A. Yes, sir. Q. Went to the water-closet? A. I don't know where he went. Q. He got up and left the machine? A. Yes, sir. Q. He stopped the machine, didn't he? A. Yes, sir. Q. It was perfectly quiet when he left? A. Yes, sir. Q. And while he was away you got into his place? A. No, sir; I was not near it. Q. Where did you go? A. I didn't leave my place. One of the caps got caught. Q. Didn't you put it

Opinion of the Court.

into the machine? A. No, sir; I didn't know nothing about the machine. Q. The machine was perfectly still? A. Yes, sir. Q. The boy stopped it when he left it? A. Yes, sir. Q. Will you explain how it was that you started it again? A. I didn't start it. It started itself when I put my hand in. I come this way on the back of the machine, and when I put my hand in to take the cap the machine started. Q. You put your hand in? A. Yes, sir. Q. He didn't tell you to put your hand in? A. No, sir; nobody told me to put my hand in.

The court, ARNOLD, J., charged the jury as follows:

This boy was injured outside of his employment, not in it. The testimony shows that he was to pick up caps, not to work the machine. This case is a question of law and not of fact. The verdict must be for the defendants.

—The jury returned a verdict in favor of the defendants. A rule for a new trial having been discharged, judgment was entered on the verdict, when the plaintiff took this appeal, specifying that the court erred in directing the jury to render a verdict for the defendants.

*Mr. E. Ellsworth Stout* and *Mr. Thomas R. Elcock*, for the appellant.

That the case made out was sufficient to go to the jury, counsel cited: Crissey v. Railway Co., 75 Pa. 86 ; Penna. R. Co..v. Kelly, 31 Pa. 372 ; Oakland Ry. Co. v. Fielding, 48 Pa. 320 ; Rauch v. Lloyd, 31 Pa. 358 ; Hestonville etc. R. Co. v. Gray, 3 W. N. 421 ; Coombs v. Cordage Co., 102 Mass. 572 ; Rummel v. Dilworth, 111 Pa. 351 ; Brown v. French, 104 Pa. 604 ; Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 280.

*Mr. Richard C. Dale* (with him *Mr. Samuel Dickson*), for the appellees.

Counsel cited: Rummel v. Dilworth, 131 Pa. 509.

PER CURIAM:

We are not satisfied that there was any error in directing the jury to find in favor of the defendants. The plaintiff's own version of the transaction shows he was not injured in doing, or attempting to do, anything properly within the scope

Opinion of the Court.

of his employment. He testified, in substance, that defendants' foreman assigned him to work at one of the trimming machines operated by a boy about his own size; that he was directed to lift the unfinished tin caps from the floor, and place them in a box where they could be conveniently reached by the operator, and placed in the machine. There is no evidence that he was either directed or expected to participate in the operation of the machine, and hence no instructions were given him in relation thereto. After attending for some time to the work assigned to him, he says, "something stopped the machine, and the other boy ran away. I thought it was my place to take the thing out. So I put my hand in to pull the cap out after the boy jumped off the machine; and the machine started up, and caught my hand." While plaintiff's motive in thus interfering with the machine, which the operator had left, was doubtless commendable, he undertook to do something that was not within the scope of the work to which he says he was assigned, and which, up to that point of time, he appears to have performed without any difficulty. That work was neither difficult nor dangerous; and, if he had not voluntarily undertaken to interfere with the machine, which appears to have been in the exclusive charge of the operator, he would not have suffered the much to be regretted injury. There was therefore no error in holding, as the learned trial judge did, that plaintiff "was injured outside of his employment, not in it." We find nothing in the evidence that would have warranted the jury in finding that the injury complained of resulted from negligence of the defendants.

Judgment affirmed.