## GEO. MELCHERT v. SMITH BREWING CO.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued January 29, 1891—Decided March 9, 1891.
[To be reported.]

1. The mere fact of the occurrence of an injury to a workman, in the course of his employment, raises no presumption of negligence on the part of the employer; and for such an injury, the employee can recover against the employer only upon making affirmative proof that the defendant's culpable negligence produced it.

2. In rare instances, such as that presented by the case of Rummel v. Dilworth, 131 Pa. 509, it has been held that the employment of young and inexperienced persons to work amidst dangerous machinery, imposes upon the master the duty of warning such employees of the latent dangers involved in their work:

3. But this kind of liability is a very refined one at best, and the essential fact of the existence of the alleged latent danger, as the source of a consequent duty as to information, must necessarily be established clearly, before any charge of negligence in that respect can be sustained: Per Mr. Justice GREEN.

4. When the work and the place are not dangerous, and the materials are those in common use, there is no liability of the master to an employee, injured by an accident, as for a breach of the duty of protection by previous instruction and warning: Allison Mfg. Co. v. McCormick, 118 Pa. 519; Gillen v. Rowley, 134 Pa. 209; Zurn v. Tetlow, 134 Pa. 213.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

No. 56 January Term 1891, Sup. Ct.; court below, No. 311 March Term 1889, C. P. No. 4.

On May 4, 1889, George Melchert, by his next friend Gottlieb Melchert, brought trespass against the Robert Smith India Pale Ale Brewing Company, for personal injuries alleged to have been received by the plaintiff in consequence of negligence of the defendant company.  Issue.

At the trial on May 13, 1890, the following facts were shown on the part of the plaintiff:

On April 8, 1889, the plaintiff, then between fifteen and six-

teen years of age, entered into the employ of the defendant and was set to work in the cellar of its bottling establishment, assorting bottles of ale. The bottles had been stored on shelves, in order that their contents might " age." They were laid on their sides and piled in double rows on the shelves. The plaintiff's work consisted in taking them from the shelves, inspecting them to see whether or not there had been any leakage through the corks, laying to one side any bottles from which leakage had taken place, and putting those that were found to be full in boxes, for removal to the room where labeling was done.

After the plaintiff had worked about fifteen minutes, and had taken from the lower shelf, which rested on the floor, from fifty to seventy-five bottles, one of the bottles not yet removed burst or broke, and a piece of the glass entered one of his eyes and destroyed its sight. No one else witnessed the accident, the plaintiff being alone at the time. He testified that he was unable to say whether the bottle burst by reason of the working of the ale within it, or whether it slipped from the top of the pile of bottles on the shelf and was broken by striking on the floor. The physician, who attended the plaintiff after the accident, testified that the injury to his eye was such as might have been caused in either of these ways. George Geiger and James McNamee, who had worked in the defendant's brewery for about a month prior to the plaintiff's injury, testified that they had seen a number of bottles of ale explode without being struck by anything. On cross-examination, they stated that they never reported any of those explosions to their superiors. James Hughes testified that he was a practical brewer of over thirty years experience in England and Scotland; that he had worked at the washing machine in the defendant's brewery from March to August or September 1889, but had never worked for any other brewer in this country; that any ale might explode when bottled, though beer would not do so; that the defendant's ale would explode sooner than most others', for the reason that it was not fined down properly before it was bottled, and a large amount of sediment gathered in the bottoms of the bottles; that age had a good deal to do with it, and the older it was the more gas would have formed in the bottle, and the more likely it was to explode or burst; that the witness

Charge of Court below.

had never seen one of the defendant's bottles of ale explode, his work being on a different floor from where the ale was stored, but he had heard of explosions and had seen evidences of them; and that the witness had known in England and Scotland of the use of a wire mask over the face to prevent workmen handling bottles of ale from being injured by flying glass. There was testimony tending to show that the plaintiff had never previously been engaged in the same work, although he had had experience in labeling bottles of beer at another establishment, and that he was not informed by the defendant's foreman or any one else, before commencing work in the defendant's cellar, that the bottles were likely to explode.

On the part of the defendant, there was testimony tending to show that the defendant's ale would not and could not cause the bottles in which it was put to burst; that the defendant's foreman and officers had never heard of such an explosion occurring; that the plaintiff was instructed to remove the bottles evenly, that is, two at a time, one from each row, so as to prevent their slipping off and falling down; and that the condition of things in the cellar, immediately after the accident, indicated that he had disregarded the instruction, taking bottles from the front row without removing the corresponding bottles from the row behind it, and that this, as was supposed, had caused some of the latter to slip from their places to the floor.

The material parts of the testimony are quoted in the opinion of the Supreme Court, infra.

At the close of the testimony, the court, WILLSON, J., charged the jury as follows:

In this case, a question of law is involved which will be discussed hereafter. We, of course, all sympathize very deeply with this boy, who has met with a serious loss; but [I do not think that under the law the defendant is responsible, and I therefore direct you to find a verdict in his favor.] [1]

—The jury rendered a verdict as directed. A rule for a new trial having been discharged, and judgment having been entered, the plaintiff took this appeal, assigning for error:

1. The part of the charge embraced in [　] [1]

Arguments.

*Mr. Elias P. Smithers*, for the appellant:

1. One who carries on a business involving latent dangers is bound to know the character and extent of such dangers, if the knowledge can be acquired by reasonable diligence; and in the absence of actual knowledge, the law, in such cases, will impute the knowledge to him: Penna. etc. R. Co. v. Mason, 109 Pa. 296; Tissue v. Railroad Co., 112 Pa. 91; Myhan v. Electric Light Co., 41 La. Ann. 964. When a youthful or inexperienced servant is employed in such a business, it is the master's duty to protect him by giving him proper warning and instruction as to the risks incurred: Rummell v. Dilworth, 111 Pa. 343; Rummel v. Dilworth, 131 Pa. 509; Allison Mfg. Co. v. McCormick, 118 Pa. 519; Zurn v. Tetlow, 134 Pa. 213; Grizzle v. Frost, 3 F. & F. 622; Combs v. Cordage Co., 102 Mass. 572; O'Connor v. Adams, 120 Mass. 427; Atkins v. Thread Co., 142 Mass. 431; Myhan v. Electric Light Co., supra; Davis v. Railroad Co., 7 Law. R. A. 283.

2. The evidence in this case was sufficient to justify the jury in finding all the facts requisite to bring the case within the rule stated. The position that the defendant's ale would not explode, and that age had no effect upon its explosive tendencies, was overcome by proof of actual explosions, and by the testimony of brewer Hughes as to the tendency of all ale to explode, and the increase of this tendency with age, according to common experience: Matthew IX: 17; 4 Encyc. Brit., 246; 3 Appleton's Am. Encyc., 675. The theory that these bottles could so slide and fall as to cause the injury is very improbable, but in any event it was for the jury to find the cause of the accident: Mullan v. Steamship Co., 78 Pa. 25. The case was therefore for the jury, and it was error to take it from them: Longenecker v. Railroad Co., 105 Pa. 328; Neslie v. Railway Co., 113 Pa. 300; Delaware etc. R. Co. v. Jones, 128 Pa. 308. The safety of implements supplied by a master for his servant's use is for the jury: Baker v. Railroad Co., 95 Pa. 211; Phila. etc. R. Co. v. Keenan, 103 Pa. 124; Penna. etc. R. Co. v. Mason, 109 Pa. 296. The defendant is liable for the negligence of the foreman who had full control of the bottling department: Mullan v. Steamship Co., 78 Pa. 25; New York etc. R. Co. v. Bell, 112 Pa. 400; Lewis v. Seifert, 116 Pa. 628.

Opinion of the Court.

*Mr. E. Cooper Shapley*, for the appellee:

There is no evidence that the explosion of a bottle caused the injury; there is no evidence that the defendant knew of any latent danger, and there is no evidence that there was any latent danger. Even if there were evidence that the injury resulted from an explosion, the case would be governed by the principles announced in Allison Mfg. Co. v. McCormick, 118 Pa. 519, and Zurn v. Tetlow, 134 Pa. 213.

OPINION, MR. JUSTICE GREEN:

We are of opinion that, in any aspect of the facts of this case, the direction of the learned court below to the jury to find a verdict for the defendant was correct. The only witness to the very fact of the accident was the plaintiff himself. He was about fifteen years old, and was employed to remove bottles containing ale from shelves in a bin, to separate those that were full from such as were not full, and to put the former into boxes provided for that purpose, preparatory to their being labeled. The shelves extended to the floor, and were piled with bottles two rows deep and several rows in height. The plaintiff had commenced removing bottles from the lowest shelf, and had taken out from fifty to seventy-five, when a bottle exploded or was broken, and a piece of the glass struck him in the eye and injured him, so that the eye had to be removed. His account of the accident was very brief. He said:

"I was putting a bottle down, just going to set it down, and an explosion came from underneath the shelf. Q. What was the result? A. I was stung a little, and I got up on my feet. Q. Did it hit any part of you? A. Yes, sir; it hit my eye." On cross-examination, he said he was lying on his stomach, or nearly lying down, and lifting the bottles out. "Q. Have you any recollection as to whether one of the bottles slipped off and struck on the neck and broke? A. No, sir. The bottle I took out I set that on the floor. I couldn't tell what done the explosion or caused it. It came out from underneath the shelf when I was setting that bottle down. Q. What do you mean when you speak about an explosion? A. I mean that it burst. Q. Was it anything more than the breaking of one of the bottles and the running out of the stuff? A. It must have bursted one of the bottles, and the glass flew all around. Q. Do

you know anything further about it than that there was simply a bottle which fell to the floor and broke? A. I could not say. . . . . Q. I understand you that you won't pretend to say whether the bottle fell and broke, or whether it exploded? A. I can't say that. I didn't see it." By the court: "Q. What is that you cannot say? A. Whether the bottle fell and bursted, or whether it exploded in the shelves." By Mr. Smithers, plaintiff's counsel: "Q. Why can't you say it? A. Because I did not see it. I was just setting this bottle down, stooping." Being recalled, he was asked by the court: "Q. Was this bottle, when broken, in your hand, or not? A. No, sir. The bottle I had in my hand I set down. I was just setting it down. Q. The bottle that exploded was not in your hand? A. No, sir; it came from underneath the shelf." By Mr. Shapley: "You don't know whether it fell from the top of the row? A. No, sir."

In this state of the testimony, and it is all there is as to the essential facts, it is manifest that there is no certainty as to how the accident really happened. If the bursting was produced by the fall of a bottle from the pile of bottles which the plaintiff was handling, of course there would be no liability on the part of the defendant. The plaintiff was an employee of the defendant, and can only recover upon making affirmative proof of such culpable negligence of the defendant, in producing the injury, as in law imposes liability on the employer. The mere fact of the injury raises no presumption of negligence in such cases: Allegheny Heating Co. v. Rohan, 118 Pa. 223; Phila. etc. R. Co. v. Hughes, 119 Pa. 301. The plaintiff, being unable to say whether the cause of his injury was an act of negligence on the part of his employer, and there being no other affirmative proof to that effect, has failed to establish his right of action.

The importance of adhering to this rule appears from the testimony of the foreman of the bottling department, who said he had instructed the plaintiff to take the double row of bottles even all the way through, so the bottles would not fall down. He further said: "With that I left him, and came up into the working floor. About twenty-five minutes after seven, the boy came up into the working floor with a handkerchief to his eye, and says to me that he was taking bottles from the top row,

and a bottle broke, and a piece of glass struck him in the eye."
He further said: "As soon as the boy went to the drug-store
I went down in the cellar, and found bottles lying every way
in the bottom of the shelf, and two bottles broken. Q. What
do you mean by lying every way? A. The back tier seemed
to have fallen down. Q. Do you mean slipped forward?
A. He had taken the front row and left the back row stand.
In taking off bottles from the back row the whole tier came on
top."

The plaintiff sought to establish negligence by the defendant
upon the theory that the plaintiff was put to a work involving
latent danger, and it was the defendant's duty to give the
plaintiff warning of the danger. The difficulty with this part
of the case is, if anything, more serious than the part we have
been considering. It certainly cannot be said that a service of
merely removing bottles containing ale from shelves to boxes,
is a dangerous service in itself. In the ordinary cases in which
this duty is held to arise, such as Rummel v. Dilworth, 131 Pa.
509, the employment of young and inexperienced persons to
work amidst dangerous machinery is the subject of considera-
tion, and in rare instances, as that was, it is held that such a
duty is imposed upon the employer. But that case is in no
sense applicable to the facts of this case. Here the service
was of the most simple and apparently harmless character, and
the attempt to prove that there was, in point of fact, a latent
danger, was altogether unsuccessful.

For the plaintiff two boys were examined. One of them,
Geiger, said he had been working about three weeks for the
defendant, and in that time he had seen three or four bottles
burst while he was handling them; and the other, McNamee,
said he had worked there about four or five months, and had
seen five or six bottles burst while he was handling them, and
that he had heard four or five crack, in the shelves. Both the
boys testified that they had never reported to any person the
fact of the bursting, or given any kind of notice to any of the
officers of the company. Another witness, named Hughes,
said he was a practical brewer, and that bottles with ale in them
were liable to burst; that he had worked for several months
in the defendant's brewery, but that he had never seen any of
their bottles explode. This was the plaintiff's proof of the al-

Opinion of the Court.

leged latent danger of bursting. As no notice was shown to
have been given to the defendant of the fact of the bursting in
the cases stated by the witnesses, the defendant would not be
charged with a knowledge of the actual fact. But, on their
side, five witnesses were examined, all of whom testified that
they had been engaged in different capacities in the brewery
for periods varying from three to twenty-one years, and had
never known or heard of the explosion of a single bottle.
Smith, the foreman of the bottling department, said he had
been in the service about eight years; that they had never
had an accident of this kind before or since; that he had
handled hundreds of thousands of dozens of the ale; that he
had never known a bottle to explode, and that the bottles
would not explode from the working of the ale itself. Another
witness, Henry Smith, said that he was the brewer of the es-
tablishment and had been for twenty-one years, and that in all
that time he had never known a bottle to explode; and further,
that it was utterly impossible for this ale to explode, after it
had undergone two fermentations and been put in bottles, as it
could not gather gas enough for that purpose. He also said
he had never heard of a bottle of ale exploding of itself during
the whole time of his service. Another witness, Thompson,
said he was the secretary of the company, and had been in the
business nearly eight years, and had been in the bottling-house
several times each day, and had never known a bottle to ex-
plode, and never heard of an explosion of a bottle either in the
brewery or elsewhere. Parker, another witness, said he was
the treasurer and manager of the defendant company since its
formation, three years, and with the business before that for
eight or nine years; that he had excellent opportunity for
knowing whether the bottles of stored ale would burst, being
frequently in the cellar; and that during the whole time he
had never known a bottle of Smith's ale to explode. Another
witness, Erwin, said he was a bottler for twenty-five years, and
had bottled Smith's ale for seventeen years, and had never
known a bottle of it to explode. We have thus, on the one
side, the testimony of two boys, who said that they had known
a few bottles to explode, but that they had never informed the
company or any of its employees of the fact; and, on the other
side, the testimony of five competent persons, with the most

ample experience in handling this particular ale, all of whom say that they never knew or heard of the explosion of a single bottle.

The plaintiff's proposition is that the danger of explosion was an actual, latent danger, which was known to the defendant, or ought to have been known, and therefore it was the duty of the defendant to warn the plaintiff of this latent danger, and for not doing this the defendant was negligent. It will be seen at once, from the above review of the testimony, that the plaintiff entirely failed to show any knowledge by the defendant of this alleged danger, since the fact of the explosions was not communicated by either of the witnesses who say they had knowledge, and all the other testimony proves there was no such danger, because there never were such explosions. The learned court below could not possibly commit that question to the jury upon such a state of testimony. This kind of liability is a very refined one at best, and the essential fact of the existence of the alleged latent danger, as the source of a consequent duty as to information, must necessarily be clearly established before any charge of negligence in that respect can be sustained. In addition to the foregoing considerations, the case comes within the principle stated in Allison Mfg. Co. v. McCormick, 118 Pa. 519; Gillen v. Rowley, 134 Pa. 209; and Zurn v. Tetlow, 134 Pa. 213, that where the work and the place are not dangerous, and the materials are those in common use, there is no liability on the part of the master as for a breach of the duty of protection. This was eminently the case in the present instance, and the court below was quite justified in directing a verdict for the defendant.

Judgment affirmed.