## ALLISON MFG. CO. v. MARY McCORMICK.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILA-DELPHIA COUNTY.

Argued January 9, 1888—Decided January 30, 1888.

1. To be relieved from liability for injuries received by a servant from the use of defective materials, the master is not required to supply the best materials known, or to subject such as he does supply to an analysis to determine what hazard may be incurred in their use.
2. For injuries thus suffered by a servant when engaged in a work and in a place not in any sense dangerous, the materials being those for a long time in common use for the purpose to which they were applied and the work done under the direction of a competent superior, the master is not liable.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 423 January Term 1887, Sup. Ct.; court below, No. 442 December Term 1884, C. P. No. 4.

On November 29, 1884, an action in case for negligence was begun by Mary McCormick against the Allison Manufacturing Company. The plaintiff was the widow of Michael McCormick and the mother of his minor children. ˙ The defendant company was operating a car-works and tube-mill at Thirty-second and Chestnut, Philadelphia, and at the time of the injury complained of, Michael McCormick was in their employ.

At the trial, on February 7, 1887, it was shown on the part of the plaintiff that on September 4, 1884, Michael McCormick, employed by the defendant company as an ordinary laborer, was ordered with two other men to paint the inside

of an empty water tank in the second story of one of the shops. The tank was about twelve feet high and perhaps ten feet wide, and had a float suspended in it by a chain. The float was about two feet less in diameter than the diameter of the tank, and, when the tank was in use, floated on the top of the water therein. By direction of the "man they call the boss painter," the three men carried with them into the tank several buckets of paint known as Windsor Black, or black varnish, which was made chiefly of asphaltum and contained a large proportion of benzine. McCormick and one of the men were sent into the tank under the float with three buckets, each containing about a gallon of the mixture.

Owing to the height of the tank, the top being near the ceiling, and the darkness under the float, McCormick and his companion were provided with an ordinary railroad lamp. The other hand worked on the inside, above the float suspended about four feet from the top of the tank, and, when he had nearly completed his portion of the work, an explosion occurred below the float and all three men were injured by the flames and vapor, McCormick and his companion so seriously that they both died the next day. These facts were undisputed.

On the part of the defendants it was shown that the paint was of a make which had been in use in their shops for fifteen years or more; that from fifteen to forty barrels of it were used each year and no explosion had ever occurred from it; that it was used in the same fluid condition in which it was procured from the manufacturers, chiefly in covering iron and woodwork exposed to water and the weather; and that the board of underwriters had passed it as a brand safe for shipment on ocean steamers. These facts were undisputed.

At the close of the testimony the defendant requested the court to charge the jury that under all the evidence in the case the jury should find a verdict for the defendant.

The court, ARNOLD, J., then charged the jury as follows :

It is a well established rule of law, and it applies to everybody who employs another, that the employee takes all the risks which are incident to and reasonably to be expected from

the nature of the employment. It is an old, well settled rule of law, and no matter how much it may be complained of, it is a good law, and applies to everybody. Take it to yourselves. You may own a house; you may employ a roofer to go up on the roof to repair the roof or paint it, or an ordinary laborer, who is not a roofer, to go up and clean the roof, and while he is there he slips and falls off. He must bear the loss, because it is a risk of his employment. It is a good rule of law, and applies to all alike; it makes no difference whether they be manufacturing companies or simply householders, or anybody who hires another. The blacksmith you employ to shoe a horse takes the risk of being kicked; the hostler in the stable takes the risk of being kicked. All those things are the risks of the employment. How often you hear of them during life! They constantly occur to people who are working to get their daily bread; and yet while they are working to get their daily bread an accident takes away from them their means of earning their daily bread, even their life itself. It is a hard case, but they have to take the risk of employment.

Therefore, if McCormick's death was the result of one of the reasonable risks of a man employed in that employment, no matter how sad the circumstances may be, that rule of law is to be applied, as well by the jury as the judge.

The case is a sad case. I sympathize very much with this widow. Yesterday I had some doubt about letting the case go to you, but I determined to lay down the law to you very emphatically and trust to you as twelve men brought here from the body of the county, put upon your oaths to take the law from the court, to find the facts according to the evidence and apply the law to them. We are to do justice according to law, and render our verdicts according to evidence, remembering that we are to forget individuals and to consider the whole body, the whole fabric, the whole of the community, in applying a rule of law, which bears with as much hardship in one case as it does in another, and with as much benefit to one man as to another.

I took the pains last night to look up this rule of law so far as it has been established in Pennsylvania, and I have extracted it from a few of the opinions of the Supreme Court in order

Charge of Court below.

to let you know exactly what the rule is as laid down in the court's own language.

An employee assumes the risk naturally and reasonably incident to his employment. He is not bound to risk his safety in the service of his employer, and may, if he think fit, decline any service in which he reasonably apprehends injury to himself: Ry. Co. v. Bresmer, 97 Pa. 103. An employee assumes the risk of all dangers in his employment, however they may arise, against which he may protect himself by ordinary observation and care. The employer's liability arises when he subjects the employee to dangers which he ought to foresee and provide against, but not for those dangers to which the employee voluntarily subjects himself, although he does so without carelessness on his part. If the employer furnish appliances which, although not the best that can be obtained, yet may be used without danger, he has discharged his duty and is not responsible for accidents: P. & C. R. Co. v. Sentmeyer, 92 Pa. 276. In accepting employment, an employee is assumed to have accepted all risks which are incident thereto, and which are patent, that is, plain, or of which he ought to inform himself; and the employer does his duty when he provides for his employee in such manner as he fairly and reasonably deems prudent and safe: Sykes v. Packer, 99 Pa. 465. If the risk run is such that neither party can be assumed to have known it, or could reasonably be expected to have foreseen it, neither party has a claim against the other. Each must bear his own loss. Because the injury might possibly have been prevented by some device, it does not impose on the employer an extraordinary liability. If the risk is an ordinary one the employer is not liable, although the employee uses ordinary care, and is therefore without fault: North. Cent. Ry. Co. v. Husson, 101 Pa. 7.

I have given the instance of an ordinary householder who employs a mechanic to do his work. It would be hard to apply a rule of law in that case which would make him liable to have his house taken away, simply because the man he hired has been hurt while doing the work, and without fault on the employer's part. Suppose you employ a cook, and the cook is working at the range, and her clothes take fire, and she is burned. That is a sad case; but she cannot recover damages

which might take your house away for that.   Suppose a boiler
bursts and she is hurt.   You are not liable therefor.   Suppose
a boiler bursts and the engineer is blown up.   It is a hard
case ; still it is the risk of the employment which every man
runs more or less in his lifetime.   Even in the case of a pow-
der mill, where the risk is very great, the eyes of the employer
and employee are open.   Each takes the risk of the employ-
ment.

What is the negligence charged against this particular com-
pany?   Wherein has it failed to do any duty to this man ?
Without expressing an opinion, though I have a very strong
opinion in the case, I am going to leave it to you twelve honest
men, who have heard this testimony, to say wherein this com-
pany has failed in its duty.

If, in the case of the man injured by a rope breaking, the
rope proved to be old, and attention called to it, and the
workman told to go on, there may be a recovery.   But that is
not like the case of a man sent to do an ordinary day's work
of painting, with paint which the company's officers say they
bought of regular manufacturers making it for years and
years.

Has this company been guilty of any act of negligence in
this case ?   Reserving my opinion for future consideration and
action, I leave it to you to say wherein this employer has
differed from any other employer, has omitted to do anything
which it ought to have done.   If you find it has, then you
may find a verdict for the plaintiff ; but if, on the contrary,
you find it has done no more than anybody else would have
done in asking the man to clean the tank, getting the paint
and setting the man to work, and if the accident was an acci-
dent which could not have been foreseen, if it was what we
might call an unavoidable and unexpected accident, then of
course the company is not liable.   If you find it has omitted
to do what it should have done and that it has been neglect-
ful, then you will find a verdict for the plaintiff.

If you are of the opinion the plaintiff ought to have a ver-
dict in this case, the rule of damages is laid down in this way :
You are to give the plaintiff such damages as will compensate
her for the loss which she has suffered by the taking away of
her husband's earning power and the support which, if alive,

she would have derived from him in the future, remembering that in this case the evidence shows that the man was earning seven dollars and fifty cents to nine dollars or ten dollars a week. If you are of opinion the plaintiff should recover, and see fit to give her damages, you are to compensate her for the actual money loss suffered from the loss of her husband's support. You are to find from the evidence his earning power, and what his probable earning power in the future would be.

Damages are not like fines; fines are given as punishment without regard to compensation; but damages for an injury are based strictly upon compensation. There is nothing vindictive allowed, nothing outrageous, but strictly compensatory, in case you find the plaintiff is entitled to damages at all.

The verdict of the jury was in favor of the plaintiff for the sum of $5,000. A rule for a new trial was afterwards discharged, and judgment on the verdict entered on March 23, 1887. Thereupon the defendant company took this writ, assigning for error, inter alia, the refusal of the court to charge the jury that the verdict should be for the defendant.

*Mr. Richard C. Dale* (with him *Mr. John C. Bullitt*), for the plaintiff in error:

While there are many cases in which the question is discussed, whether it is the province of the court or the jury to pass upon the question of negligence upon a given state of facts, all the decisions agree in the statement of the rule, that it is the duty of the trial judge to instruct whether any facts have been established, by sufficient evidence, from which negligence can reasonably and legitimately be inferred. A discriminating and forcible statement of the rule is found in Metropolitan Ry. Co. v. Jackson, L. R. 3 App. C. 193: "The judge has to say whether any facts have been established, by evidence, from which negligence may be reasonably inferred; the jurors have to say whether from these facts, when submitted to them, negligence ought to be inferred;" which statement has been adopted and approved in Randall v. B. & O. R. Co., 109 U. S. 478.

2. This court has held that, in a case in which a court ought to say that there is no evidence sufficient to authorize

the inference of negligence, there is the right and the duty to withhold it from the jury: Howard Express Co. v. Wile, 64 Pa. 201. When the present case is examined, the fact of the accident is the only ground upon which negligence can be inferred. It cannot be that there was a lack of reasonable care on the part of the defendant company in supplying to the painters in its employ a brand of paint which they had used for many years under varying conditions, with no occurrence to give warning of risk of explosion. We submit that this should be conclusive, even if the case were between individuals, where the ordinary law of negligence applies.

3. But such is not this case. The plaintiff's husband, when he entered the employ of the defendant, accepted the risk which he incurred as incident to the business, as well as that arising from the carelessness of co-employees: Sykes v. Packer, 99 Pa. 465; P. & C. R. Co. v. Sentmeyer, 92 Pa. 276; Payne v. Reese, 100 Pa. 301; Crawford v. Stewart, 19 W. N. 48; Reading Iron Works v. Devine, 109 Pa. 246; Brossman v. Railroad Co., 113 Pa. 490. And Brown, the boss painter, was the fellow-servant of the deceased: Lehigh V. Coal Co. v. Jones, 86 Pa. 432.

*Mr. D. Webster Dougherty* (with whom was *Mr. Daniel Dougherty*), for the defendant in error:

It must be borne in mind that it was proved to the jury that McCormick was not a painter, but a laborer employed in carrying pipe, driving a cart, etc., and that, as far as appeared in evidence, he had no knowledge of the existence of benzine in the paint, or the dangerous qualities of benzine; moreover, that nearly half of the contents of the three buckets of paint was benzine, from which the accident was inevitable.

1. What risks did McCormick assume by virtue of his employment as a laborer? In order to imply assent on the part of servants to the hazards of service, the hazards and risks must be patent or such as the servant knows, or ought to know of; no assent can be implied where there is no knowledge: Wood, Mast. & Serv., § 353. This rule is in entire conformity with the decisions of this court: Baird v. Pettit, 70 Pa. 477; Schall v. Cole, 107 Pa. 1; Green & Coates St. Pass. Ry. Co. v. Bresmer, 97 Pa. 103; Oak Bridge Coal Co. v. Reed, 5 W.

N. 3; Rummel v. Dilworth, 111 Pa. 349. The risk of injury from the explosion of the vapor from the paint was in no sense an ordinary risk reasonably incident to McCormick's employment. At all events, whether it was or not, was for the jury to find as a fact, and not for the court to declare as a matter of law.

2. What duty did the defendant company owe to Mc-Cormick? It is the master's duty to use ordinary care and diligence to provide safe materials for use by his servants; and if the master know, or would have known had he used ordinary care, that the materials provided are unsafe, he is answerable for injuries caused thereby to his servants: Shear. & Redf., Neg., § 92; Spelman v. Fisher, 56 Barb. 151; Connolly v. Potter, 41 Barb. 366; Davis v. England, 10 Jur., N. S. 123; Noyes v. Smith, 2 Vt. 59; Patterson v. Railroad Co., 76 Pa. 393; Caldwell v. Brown, 53 Pa. 453; Frazier v. Penn. R. Co., 38 Pa. 104; Green & Coates St. Pass. Ry. Co. v. Bresmer, 97 Pa. 106; Tissue v. B. & O. R. Co., 112 Pa. 91; Whart., Neg., § 232. At all events, the question of the want of due care in this respect was a question of fact for the jury: Green & Coates St. Pass. Ry. Co. v. Bresmer, 97 Pa. 103. The court will not strain a point against this laborer to raise a theoretical connection between him and the boss painter, in order to shift the responsibility from the master: Penn. & N. Y. Can. & Ry. Co. v. Mason, 109 Pa. 300.

OPINION, MR. JUSTICE WILLIAMS:

The plaintiff below brought suit to recover damages for the loss of her husband, who was killed while in the service of the defendant company. Her case is a sad one, but her right to recover must rest on a legal liability of the employer or her action must fail.

The evidence shows that the Allison Manufacturing Company is largely engaged in the manufacture of cars, and of tubing, in the city of Philadelphia, employing a large number of men. On the day of the accident a large wooden tank, some twelve feet in height by ten feet in diameter, used for storing water, for testing tubing and other purposes, was emptied of its contents and cleaned. Three men were then sent under the direction of the company's painter, to cover the inside of the

tank with paint. Of these, McCormick and another man were placed on the inside of the tank at the bottom, while the third was suspended on a float or cover above them and about four feet below the top. They were all supplied with paint, and the men at the bottom had also a lamp, described by the witnesses as a "railroad lamp covered with glass." They had been at work for a quarter of an hour or more when an explosion took place, and the tank was for an instant filled with flame. McCormick was taken out last, and he died soon after from injuries received from the explosion and inhaling the burning vapor. This was the plaintiff's whole case, except that evidence was given to show that benzine was used in the manufacture of the paint, and that an explosive gas could be obtained from it.

The only question presented is, whether this case should have been submitted to the jury. In considering this question it must be borne in mind that the paint used was a well-known brand called "black varnish," and that it has been manufactured in this city for many years and in large quantities. The evidence shows that the defendant company has used it for ten or twelve years, buying it by the barrel direct from the manufacturers. How, and under what circumstances, the explosion in the tank occurred is not known. The theory of the plaintiff is, that the quantity of benzine used in preparing the paint was so great that upon the opening of the cans and spreading the paint on the interior of the tank, the evaporation of the benzine filled the tank with an explosive gas, and that this gas came in contact with the flame of the lamp and exploded. Assuming this theory to be correct the plaintiff below argued that the employer was bound to know the composition of the paint, the effect of spreading it on the interior of the tank, and the danger to his servant by the explosion of the gas so collected. The defendant on the other hand asked the court to instruct the jury that there could be no recovery upon the evidence before them. The court declined to take the case from the jury, but, with evident misgivings as to the propriety of so doing, left it to them to determine whether the employer, the defendant company, was guilty of negligence.

There was no conflicting testimony. The facts were free from difficulty. There is in this case no legal presumption to

take the place of proof of negligence or to shift the burden of proof. What is there then in the case of the plaintiff to show want of care or failure of duty on the part of the defendant? The work to be done was the painting of the interior of a water-tank. The material employed was a well-known and commonly used brand of paint. It was purchased from the manufacturer ready for use. The laborers were sent to do the work under the direction of the company's painter, who went with them, placed the men, and gave them their directions. The paint had been in use by the public for many years, and by the defendant company for ten or twelve, without accident of any description. It is not easy to see what more could have been expected from an employer.

The general rule requires of the master that he provide materials and implements for the use of his servant, such as are ordinarily used by persons in the same business; but he is not required to secure the best known materials, or to subject such as he does provide to a chemical analysis in order to settle by experiment what remote and possible hazard may be incurred by their use. This rule is recognized in the recent case of Payne v. Reese, 100 Pa. 301, in which the present Chief Justice said that the " duty of the master is to provide machinery and materials of an ordinary character." So, also, in Crawford v. Stewart, 19 W. N. 48, which was an action to recover damages for injuries resulting from the falling of scaffolding upon which the men were at work, the master was held not liable. The reason is stated by Justice PAXSON with his usual directness, in these words : " There is no evidence that the men who erected the scaffold were not competent workmen, nor that they were not supplied with suitable materials." The same rule is also stated in Lewis v. Seifert, 116 Pa. 628.

In the present case the work at which McCormick was employed was not a dangerous one. The place was not one that could be regarded as in any sense dangerous. The materials were those in common use for the purpose for which they were used by the defendant. The work was done under the supervision of a competent painter. The accident, happening under such circumstances was outside the range of ordinary experience, and one, therefore, against which the measure of care due from the employer could not protect the servant. To

hold otherwise would be to disregard the well-settled law upon the subject and to make the employer an insurer of the safety of his employee.

Judgment reversed.

MR. JUSTICE STERRETT dissents.