## WHEN A MASTER'S NEGLIGENCE IS A QUESTION FOR THE JURY.

Circuit Court of Cuyahoga County.

THE OHIO & WESTERN PENNSYLVANIA DOCK COMPANY v. ISAAC TRAPNELL.

Decided, December 23, 1912.

*Negligence—Failure to Provide Proper Means of Communication Between Operatives and Those Working Around Machinery—Evidence —All Circumstances Attendant Upon an Accident Admissible— Qualification of Expert Preliminary Question for Court.*

1. Where an engineer whose duty it is to oil machinery is not provided with any means of keeping the machinery stationary while oiling it, nor with speaking tubes, telephones or other means of communication with those in another room who control the machinery, and no rules are promulgated relative to such communication, and the engineer is injured while oiling a machine, whose operator to his knowledge had left the premises, but which was started by the operator of another machine; the question of whether or not the employer was negligent in failing to provide proper means of communication between the engine room and the operating room and in failing to formulate reasonable rules to protect the engineers against the starting of the machinery, is for the jury.

2. The master's negligence is a question for the jury, whenever it is warrantable to infer from the evidence that the injury would not have been received if a certain instrumentality or method had been substituted for that actually adopted by the defendant, and that this alternative instrumentality or method was one commonly used by other employers in the same line of business under similar circumstances.

3. It is not prejudicial error in a personal injury case to admit evidence of all the circumstances attendant upon the accident even though it does not tend to prove any fact in issue and presents a gruesome detail of the accident to the jury.

4. The competency of a witness to qualify as an expert is a preliminary question for the trial court and rests in the discretion of the court, and, unless founded on some error of law or on serious mistake, or abuse of discretion, the ruling is not reversible.

5. The fact that the party calling a witness did not examine him as to a usage or custom which would be material to the case on trial, does not preclude the other party from cross-examining him as to the existence of such usage or custom.

*Hoyt, Dustin, Kelley, McKeehan & Andrews,* for plaintiff in error.

*Ewing, Counts & Terrel* and *Harry F. Payer,* contra.

MEALS, J.; WINCH, J., and MARVIN, J., concur.

Error is prosecuted in this court to reverse the judgment of the court of common pleas in this case.

At the time of the injury complained of in the petition filed in this case, Isaac Trapnell was employed by the Ohio & Western Pennsylvania Dock Company as an engineer at what was known as No. 3 Engine and Hoist House, located on the company's docks on Whiskey Island, in the city of Cleveland. The engine room where Trapnell was employed at the time of the accident complained of, was separated from the hoist room where the operators of the engines were stationed. The engine room was on the ground floor, and contained three engines, called the single pier, middle pier and blind pier engines. The hoist room was located immediately above the engine room and separated from it by a distance of about twenty-five feet.

Trapnell, the engineer, had nothing to do with operating the machines. His duty consisted principally in oiling the machinery in the engine room and in keeping up steam. The engines were operated by separate operators, one for each machine, from the hoist house.

At the time of the accident only one of the machines was in operation; one of the others had been in operation but was stopped for repairs. The control of the engines was effected by means of rods running from the machinery in the engine room to the hoist house, where they were connected with levers. There were three of these levers for each machine. One of them is described in the record as "a foot brake, or foot pedal, four feet long. By pressing it down and fastening it with a pin put through a U-shaped iron, the machinery is held stationary until released."

This lever connects with the brake on the drum of the machine and when set as described above prevents the drum from turning.

Another lever is described as a hand lever, by means of which the friction gear is brought into play and the drum made to revolve.

The third lever opens and closes the steam throttle.  All these levers are necessary in the operation of the machines.

On the 26th of November, 1910, the day·of the accident, an operator by the name of Norton was put to work in the hoist house on what was called the single pier engine, and a man by the name of Crabowsky was put to work on the middle pier engine.

Just before the accident Grabowsky stopped the middle pier engine and left the hoist house by means of a ladder, to go to the machine shop some 600 feet away.  As he descended the ladder he saw Trapnell and told him that he had broken down and that he was going to the machine shop and would return shortly, to which Trapnell said all right.  Before leaving the hoist room, however, Grabowsky adjusted the drum brake by pinning it down, as above described, so that the drum would be held stationary.  Grabowsky also closed the throttle of his engine and threw the friction gear out.

It was a part of Trapnell's duty to keep the drum oiled.  He was in the habit of doing this two or three times a day.  He says that he oiled the drum "whenever he got a chance," or when the "operator was not working."  Originally the machines were oiled by means of a pipe about two feet long running through the meshes of the gear wheel into the hub, and the oil was poured into this pipe from outside the gear wheel.  The pipe was taken off later and a hand oil cup, called a "dope cup," was installed instead.  To reach this cup, as was. necessary in refilling it or in screwing it down so as to give the required amount of oil or grease to the part oiled by it, it was necessary to put one's hand in between the spider or crab and the gear.  The machine being shut down and the operator thereof having left the hoist house, Trapnell considered it an opportune time to adjust the dope cup. He saw that the brake was on and he himself shut off the steam, and, he says, "everything was fixed stationary."  He then put his arm in between the spider or crab and the gear "to screw the dope cup down."  At that moment Norton, who was oper-

ating the single pier engine in the hoist house above, "noticed that the counter-weight on the middle pier engine (the engine that Grabowsky had been operating) was in his way and obscured his view of the men shoveling below." He thereupon left his own levers, momentarily, and released the brake on Grabowsky's engine, as, he says, "by pulling out the pin and letting up the brake with his foot." The brake of the drum having been released the counter-weight caused the drum to revolve and Trapnell's left arm being caught between the crab and gear, was cut off. The severed portion was found, a few moments later, by Grabowsky inside the drum, "down by the dope cup at the end of the drum next to the gear-wheel."

The evidence disclosed that neither speaking tubes, telephones nor other means of communication had been provided between the engine room and the hoist house. Also that no rules had been made and promulgated by the defendant as to the method of communication between the engineer and the operators; also that no means had been provided, which were within the control of the engineer, of holding the machinery stationary while it was being oiled.

The plaintiff relied principally upon these facts and the facts surrounding the removal of the grease pipe, formerly in use, and the installation and maintenance of the dope cup instead thereof, in the manner described by the evidence, to support his claim of negligence against the defendant.

The court submitted all of these claims to the jury, to which the defendant takes exception, "not by virtue of the things said in the charge upon the given subject-matters," to use the language of the defendant's counsel, "but rather because the jury should have been told that these subject-matters were not at all for their consideration, because under the evidence in the case there was nothing to warrant the court in submitting any such subject-matters to the jury."

Specifically, counsel for the defendant object to the charge of the court, first, that the court charged the jury on the subject of defendant's failure to provide a means of direct communication between the plaintiff and the hoisters in the house above him. They say:

"It was alleged as a specific ground of negligence in the petition that the defendant failed to provide a means of direct communication between the plaintiff and the hoisters in the hoist room above him. Under the evidence this failure was not at all a proximate or contributing cause of the injuries which he received and for the very simple and all-sufficient reason that the evidence, as has been pointed out, clearly shows that plaintiff would not have used any device which had been installed."

In answer to this contention it might be observed that the issues in a case ordinarily are made up by the pleadings, as they were in this case, and in this respect we find nothing in the evidence which changed them at the trial. It is true that the evidence showed that the plaintiff was in the habit of rapping with a monkey wrench, or other instrument, on the iron rods running from the engine room to the hoist house, whenever anything was wrong with any one of the engines, or when for any reason he wanted an engine stopped, and he admits that at the time of the accident he did not rap on the rods, but gave as his reason for not doing so, that he knew that the machine on which he was afterwards hurt was stopped, and that its operator, Grabowsky, had left the hoist house.

Counsel for the defendant urge that these facts "clearly show that the plaintiff would not have used any device had it been installed."

In our opinion this does not necessarily follow from these facts. Had some means of communication been provided by the defendant, the plaintiff may have used it and he may not have done so; but had the defendant, in addition to providing such means of communication, made some reasonable rule as to its use by the engineers before attempting to work about the machinery, it is entirely probable that the plaintiff would have obeyed the rule. In any event, it is not so much a question, in our opinion, of what the plaintiff would have done under different conditions, as it is what the defendant should have done for his protection under present conditions. Certainly it can not be said, as a matter of law, that the plaintiff would not have used the means of communication or the rule prescribed as to the use thereof, had such been provided. The question, therefore, was properly submitted to the jury.

*Second.* Counsel for the defendant urge that the claim of negligence made by the plaintiff, that the "defendant failed to make and formulate reasonable, necessary and proper rules for protecting the plaintiff against the starting up of the machinery," had no place in the case, and that an instruction to the jury by the court thereon was erroneous.

This claim of the defendant is based, not upon the ground that the charge of the court on this subject was erroneous had it been given in a proper case, but that no instruction whatever should have been given on the subject in this case. They base this contention upon the fact that since the 80's the system of rapping upon the pipes "was in vogue and in full use upon that dock."

The fallacy of this contention is readily seen. In the first place, the origin of the system of signalling by rapping is not disclosed by the record. It may have originated under instructions from the defendant and it may have been the invention of the defendant's employees themselves, for their protection. But suppose this method of signalling was adopted and its use directed by the defendant and amounted to a rule for the guidance of the defendant's employees in working about the machinery and had been used by the defendant's employees, as claimed by defendant's counsel, since the 80's, the question of whether such rule, even if it amounted to a rule in law, was a reasonable and proper rule under the circumstances of this case, would still be open, and its submission to the jury under the evidence of this case was proper.

*Third.* The plaintiff's petition alleged that the defendant failed to use ordinary care in furnishing machinery with a proper oiling device. The court submitted this question to the jury for its determination.

Counsel for the defendant do not contend that the language of the court in submitting this question was improper or erroneous, but claim that the jury was not warranted in finding against the defendant on this proposition.

For anything that the record or the verdict discloses, which has come to our attention, we do not know that the jury found against the defendant on this proposition alone. The jury may have found that the negligence consisted in the failure of the de-

fendant to provide reasonably adequate means of communication between the engine room and the hoist house, or in the failure of the defendant to prescribe reasonable rules and regulations as to the method of communication between the engine room and the hoist house, or that it failed to provide the means of holding the machinery stationary while its employees were working upon it, or that it failed to use ordinary care in furnishing machinery with a proper oiling device, or based their verdict on a combination of these.

We are not unaware, of course, that counsel for the defendant claim that the subject of direct communication and the subject of rules had no place in the case, and that the jury should have been so instructed. In their brief, however, they substantially admit that if these subjects were properly submitted to the jury, there is nothing in the contention made under this heading. Having arrived at the conclusions as to these subjects above stated, we do not believe this contention is well founded.

Counsel for the defendant contend that the court erred at the trial in admitting certain evidence. First, that the court erred in permitting the witness Grabowsky to testify that while he was returning from the machine shop to his place of work, he met Trapnell being escorted away by some men, and that he continued on over to the engine room where he found the plaintiff's arm inside the drum.

Objection was made to this testimony on the ground that it did not tend to prove anything in issue in the case, and only served to present a gruesome picture to the jury to the prejudice of the defendant.

The story of the loss of the plaintiff's arm had already been told and we doubt whether the additional statement as to the finding of the severed arm in the drum heightened the color of the picture thus made in the eyes of the jurors; but whether it did or not, and although it might as well have been omitted, the fact so testified to was one of the facts of the transaction in which Trapnell lost his arm and was inseparably connected with it. We know of no rule which makes its admission erroneous, even under an admission by the defendant of the loss of the arm. We think the plaintiff had an undoubted right, at least, to show

all the facts and circumstances attendant upon the accident, and that in admitting this item of evidence the defendant was not prejudiced thereby.

It was also urged at the trial by the defendant that the witnesses Tomilty and Trapnell, Jr., a son of the plaintiff, had not qualified so as to be competent to give testimony on the subject of usage and customs as they relate to devices for holding in a stationary position the drum of a hoisting machine while working about the same.

"When a witness is offered as an expert, it becomes a preliminary question for the court to determine whether he has the requisite qualifications, and for the purpose of determining this question, the witness himself may be examined as to his opportunities and means of knowledge of the subject under inquiry.

"In determining the question in any given case, the court has first to decide whether the subject is one upon which the opinion of an expert can be received, and also what are the qualifications necessary to entitle the witness to testify as an expert. It is the prevailing rule that the decision of the trial court as to the competency of the expert, is a preliminary question resting in the discretion of the court and unless founded on some error of law or on serious mistake, or abuse of discretion, this ruling is not reversible." *Jones on Evidence,* Section 369 (371).

These objections, therefore, seem not to be well taken.

Defendants also objected that the witness Spooner, who was called by the defendant, was permitted to testify on cross-examination concerning the installation of speaking tubes on hoisting machinery as a means of communication between engineers and hoisters at various places where such machinery is used.

Counsel in their brief say that "the only thing that this evidence proved was that such devices could be installed." If it proved this much, it would at least seem not to have been erroneously admitted; but it seems to us it was clearly admissible on other grounds.

It must be remembered that the witness Spooner was being cross-examined. His cross-examination was not limited by his examination in chief. It is the settled rule of this state that "the right of cross-examination is not to be limited by the particular facts disclosed in the examination in chief, but may be extended

to whatever the party calling the witness is required to establish to make out and sustain his cause of action or his defense. Thus, a witness of the plaintiff may be cross-examined by the defendant touching all matters which it is competent for the plaintiff to prove under the issue in order to entitle him to recover, and on the other hand, the plaintiff may cross-examine the defendant's witness to all matters which the defendant may prove under the issue in order to sustain his defense." *Legg* v. *Drake,* 1 O. S., 286; *Bean* v. *Green,* 33 O. S., 144.

In cross-examining Spooner, therefore, counsel for the plaintiff were not limited by the facts disclosed in his examination in chief. They also had a right to cross-examine him as to all matters which the defendant might have proved by him under the issues made by the pleadings.

In this view of the question, it is important to remember that the defendant may have shown that it conformed to the general usage on the subject-matter prevailing among prudent and skilful employers and in well regulated concerns. *1 Labatt on Master and Servant,* Section 44, *et seq.*

The fact, therefore, that the defendant did not examine the witness as to usage did not preclude the plaintiff from examining him on that subject. Besides, it is said in *Allison Mfg. Co.* v. *McCormick,* 118 Pa., 519, that "the general rule requires of the master that he provide materials and implements for the use of his servants such as are ordinarily used by persons in the same business."

Whether or not this be the prevailing doctrine is unimportant. Suffice it to say that it is supported by numerous authorities of great weight.

Labatt, in his work on Master and Servant, Volume 1, Section 52, says:

"The master's negligence is a question for the jury, whenever it is warrantable to infer from the evidence that the injury would not have been received if a certain instrumentality or method had been substituted for that actually adopted by the defendant, and that this alternative instrumentality or method was one commonly used by other employers in the same line of business under similar circumstances."

This rule is applied both by the courts which do and by the courts which do not accept the doctrine that conformity to common usage is a conclusive defense.

In the same action the author observes that no declaration which shows a *prima facie* case of non-compliance with general usage is demurrable.

The plaintiff also was at liberty at the trial to show a non-compliance with general usage as to the subject-matter in question, and in what better way might the plaintiff show such non-compliance than by the cross-examination of the defendant's witnesses qualified to speak upon the subject? In our opinion it was not error to admit this testimony.

Lastly, counsel for the defendant complain of the conduct of counsel for the plaintiff.

While we fully recognize and appreciate the rule on this subject, as announced by the Suprem Court of this state in *Cleveland, Painesville & Eastern Railway Co.* v. *Pritschau*, 69 O. S., 438, and in *Hays* v. *Smith*, 62 O. S., 161, we do not believe that the statements and observations of counsel for the plaintiff in the course of the introduction of evidence at the trial, while they might properly have been omitted, amounted to such misconduct as would justify us in reversing the judgment in this case. We are not able to say, as a matter of law, that the jury was influenced by these statements to the prejudice of the defendant, or that they were of such a character as likely to have operated upon the minds of the jurors to the prejudice of the defendant.

We find no error in the record on which, in our opinion, a reversal of the judgment of the common pleas court would be justified, and the same is therefore affirmed.