## Moran, Appellant, *v.* The General Fire Extinguisher Company.

*Negligence—Master and servant—Safe place to work—Fall—Subcontractors—Injuries to workmen—Liability.*

1. Where an employer, in disregard of actual or constructive notice of a defect in the supports on which his work is designed to rest, proceeds without correcting the same and injury results to his employee in consequence of this disregard, the law will hold him guilty of culpable negligence, but no legal presumption of negligence arises in the first instance from the accident itself, to take the place of proof of negligence or to shift the burden of proof.

2. A master is not liable for the injury to his servant caused by hidden defects or dangers in the machinery, appliances or premises furnished to a servant, when such defects or dangers were unknown to the master and were not discoverable by the exercise of reasonable care and skill in inspecting them and when there is nothing in external appearances to create a suspicion of their presence.

3. A manufacturing company was enlarging its plant under a contract with an experienced builder, in accordance with plans and specifications prepared by competent architects. It made a

separate contract with a fire extinguishing company for the erection of a fire extinguishing apparatus, which included the construction of a tank upon foundations and supports to be provided by the manufacturing company. The contract for the tank was sublet by the fire extinguishing company and a suitable tank was erected upon the supports. The tank was filled with water and while a workman in the employ of the fire extinguishing company was at work beneath the tank, the supports gave way, and the tank fell causing serious injury to such workman. The fire extinguishing company had no notice that the supports were insufficient. In an action against the fire extinguishing company brought by such workman plaintiff contended that defendant had failed to furnish him with a safe place to work. The court decided that the defendant was not liable for defects in the supports, of which it was not aware and over which it had no control, and directed a verdict for defendant upon which judgment was entered. *Held,* no error.

Argued March 21, 1917. Appeal, No. 391, Jan. T., 1916, by plaintiff, from judgment of C. P. No. 5, Philadelphia Co., March T., 1913, No. 827, on directed verdict for defendant, in case of William Moran v. The General Fire Extinguisher Company. Before Brown, C. J., Stewart, Moschzisker, Frazer and Walling, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before Martin, P. J.

The opinion of the Supreme Court states the facts.

Verdict for defendant by direction of the court and judgment thereon. Plaintiff appealed.

*Errors assigned* were rulings on evidence and in directing a verdict for defendant.

*John G. Kaufman,* with him *Walton Pennewill* and *V. Gilpin Robinson,* for appellant.—Defendant did not provide plaintiff with a reasonably safe place in which to work, and is, therefore, liable to him for injuries sustained in consequence of its neglect in this respect: Killweyer v. Forged Steel Wheel Co., 243 Pa. 110;

Cougle v. McKee et al., 151 Pa. 602; Carr v. General Fire Extinguisher Co., 224 Pa. 346.

There is abundant evidence that the supports were improperly constructed and that the structure was an unusual one: Cooper v. Robischung Bros., 155 S. W. Repr. 1050; Ott v. General Fire Extinguisher Co., 226 Pa. 337.

The case of Israel v. Lit Brothers, 248 Pa. 463, has no application to the facts of the case.

*Frank P. Prichard,* with him *James Wilson Bayard* and *John G. Johnson,* for appellee.—The injury was due to defects in the construction of the building, for which the defendants could not be held responsible: Israel v. Lit Bros., 248 Pa. 463.

OPINION BY MR. JUSTICE STEWART, October 8, 1917:

The action was for the recovery of damages for injuries sustained by plaintiff while in the employment of the defendant company and engaged in the line of his duty. The claim is based on alleged negligence of the defendant in failing to provide a place reasonably safe for plaintiff while engaged at his work. The business of the defendant, as its name indicates, was the equipping of buildings with an improved sprinkler system for fire protection. A thread company operating a plant in Philadelphia determined on an enlargement of its plant by the construction of an additional story and the building of a fire tower in connection with the plant proper, the latter being designed to support a tank to be used for the storage of water. It entered into a contract with an experienced builder for the erection of the additions in accordance with the plans and specifications prepared by competent architects, and into a separate contract with the defendant company for the equipment of the plant with its sprinkler system, which included among other things the construction and erection of a white cedar water tank with a capacity of 20,000

gallons, upon foundations and supports to be provided by the owners. The defendant company sublet the building of the tank to an independent contractor long experienced in the business. Upon the completion of the building proper the defendant entered for the purpose of installing its sprinkler system. It had put in place a large water tank on the supports provided, and had introduced its entire system in the building, when, for the purpose of testing its sufficiency, it caused the water to be turned into the tank on the afternoon of December 26, 1911, to the depth of four feet, and on the morning following it caused the tank to be filled to its capacity. About an hour thereafter the foundation or supports on which the tank rested gave way, and the whole structure, including the tank, fell to the ground, and the plaintiff, who was at the time engaged in doing some work on pipes beneath the tank, was seriously injured by the collapse. At the close of plaintiff's case, the trial judge, affirming the ninth point submitted by the defendant, gave binding instructions in favor of the defendant and a verdict was rendered accordingly. The appeal raises but a single question calling for our consideration: Did the evidence submitted by the plaintiff touching the negligence charged show a case requiring submission to the jury? That the collapse which occasioned the plaintiff's injury resulted from a defective construction of the base on which the water tank was to rest, is conceded. There is a diversity of view, however, expressed as to just what the defect was that was the initial operating cause; but the witnesses all agreed that the base, constructed as it was, and as the event proved, was inadequate for the support of the tank carrying 20,000 gallons of water. There is not a suggestion that the collapse occurred because of any defect or imperfection in any of the work done or materials furnished by the defendant; these conformed in all respects to the plans and specifications. The defendant had nothing whatever to do in furnishing the supports

for the tank.   So that it may clearly appear what the
issue was, we quote from the plaintiff's statement of
claim.   After reciting the facts we have given, it pro-
ceeds: "Whereupon it then and there became the duty
of the said defendant, before permitting the said work to
be so placed and filled with water, to ascertain and pro-
vide that the supports of the said tank be sufficient to
safely carry the weight of the said tank and water it
was designed to contain, and that said tank was prop-
erly superimposed upon said supports, and thereby to
observe its duty to furnish to the plaintiff and other em-
ployees reasonably safe premises in which to perform
their duties and work."   We may dismiss from con-
sideration so much of the statement as by innuendo
suggests that the tank was not properly superimposed
upon the supports.   Nowhere in the evidence do we find
a suggestion that the collapse was due to any such cir-
cumstance, or that in point of fact any such circum-
stance existed.   With this feature of the case eliminated,
the only negligence charged was failure on the part of
the defendant before permitting the tank to be put in
place and filled with water to ascertain and provide that
the supports were sufficient to safely carry the weight
of tank and water the latter was designed to contain.
If any such legal duty rested on the defendant, then
manifestly the case was one for the jury, and on the evi-
dence it was error to withhold it.   We know of no legal
principle from which any such rule of duty as is here
sought to be applied can be derived; nor do we know
of any accepted authority which asserts it.   True it is
that where an employer in disregard of actual or con-
structive notice of a defect in the supports threatening
danger on which his work is designed to rest, proceeds
without correcting the same and injury results to his
employee in consequence of this disregard, the law will
hold him guilty of culpable negligence; but in such case
no legal presumption of negligence arises in the first
instance from the accident itself to take the place of

proof of negligence or to shift the burden of proof. Allison Manufacturing Co. v. McCormick, 118 Pa. 519; McKenna v. William H. Nixon Paper Co., 176 Pa. 306. An indispensable condition of plaintiff's right to recover is that the evidence discloses such facts as will warrant a reasonable inference that the injury resulted directly from a failure of duty on the part of the employer. There are cases where certain facts being shown, or admitted, the law will presume negligence, such as involve neglect of a statutory duty and the like; but in the present case not a single fact alleged or proved is in itself inconsistent with the plaintiff's entire freedom from responsibility in connection with the accident, and therefore the real and only question in the case is, what was the measure of this defendant's duty towards the plaintiff as its employee, for until this be ascertained, the question of its negligence admits of no discussion. Once this is ascertained the question of negligence is to be determined in the light of the evidence adduced or the admitted facts. This measure of duty is nowhere more clearly and satisfactorily defined than in Thompson's Commentaries on the Law of Negligence, where in Sec. 3785 it is said: "Judicial holdings unite upon the proposition that the master is not liable for an injury to his servant caused by hidden defects or dangers in the machinery, appliances or premises furnished to a servant, when such defects or dangers were unknown to the master and were not discoverable by the exercise of that reasonable care and skill in inspecting them already spoken of, and when there is nothing in external appearances to create a suspicion of their presence; otherwise, if the defect could have been discovered by the exercise of reasonable or ordinary care or diligence." In the light of this clear statement of the law, how stands the present case? As between the owner of the premises and the defendant company, upon the facts of the case, the latter stands free from all liability; he had no share in the construction of the tower, foundations or supports,

or any part of the building; by his contract with the owner, the latter was "to provide and erect a suitable foundation of sufficient strength and proper elevation of twenty feet above the highest sprinkler to safely support the 20,000 gallon gravity tank." As between the defendant company and this plaintiff, notwithstanding the fact that defendant had sublet to an independent contractor the work of constructing and putting in place upon the supports provided by the owner of the water tank, it did not therefore escape from the duty of exercising reasonable or ordinary care to the end that the place assigned its employee to work might be in such condition that its employee would not be exposed to personal injury, such duty being non delegable; in other words, that to this extent the subcontractor and his employees were the agents and servants of the defendant company, and for their failure of duty in the particular mentioned resulting in injury, the defendant would be liable. As between the subcontractor and the defendant company, the liability would rest on the former by the terms of their contract, but with that contract the plaintiff and employee had nothing to do. So then, accepting appellant's theory of the case, what failure of duty on the part of the subcontractor as the defendant's agent and its immediate employees, can be derived from the evidence? It was upon supports provided by the owner of the premises that the tank was to be erected. These were provided by the owner and upon them the tank was placed. Concededly at this time there was nothing in external appearances to create a suspicion of insufficiency in the supports on which the tank was to rest. The tank was put in place under the direct supervision of the subcontractor's foreman, who for eighteen years had been accustomed to this kind of work. This man testified that he saw nothing unusual in the construction of the supports, nothing to indicate to him that there was danger in placing the tank upon them, and that if there had been anything out of the ordinary he would have

stopped the erection of the tank. The man who had built
the tower and placed everything in position for the tank
to rest upon testified that there was nothing apparent to
him or any other experienced mason that there was any
danger of the tank falling. The testimony makes it very
clear that nothing short of an exhaustive expert ex-
amination would have disclosed the defects which
caused the collapse. No duty rested on the defendant
to make such examination. With the tank once in place,
the work of the subcontractor was complete and the next
step taken was under the direction of the defendant's
own immediate employees—the testing of the sufficiency
of the tank itself, not of the adequacy of the supports
on which it was placed. Unquestionably the collapse
resulted from the inadequacy of the latter, but here
again from what facts appearing in the evidence would
a jury be justified in finding that the exercise of ordi-
nary prudence would have suggested to the defendant
company the danger in filling the tank to the limit of its
capacity? Every one concerned knew that the tank
was designed to carry 20,000 gallons of water, the build-
er knew it or must be held to have known it; the owner
certainly knew it, as did the architects. What reason
could this defendant have, under the conditions stated,
for distrusting the technical skill of these experienced
men, particularly the technical skill of the builder, and
undertaking an investigation itself for latent defects in
the structure, for which it did not pretend to be quali-
fied by experience or professional skill? It nowhere ap-
pears that in the course of such business—installing
sprinkling apparatus—it is customary or usual for the
parties installing the same to examine into the suf-
ficiency of the tank supports provided by the owner, and
the duty resting upon such an one, in the absence of ex-
press or constructive notice to him, means no more than
that it is to be observant of such defects threatening
danger as are exposed to view. The case presents no
features which distinguish it in law from the case of

Allison Manufacturing Co. v. McCormick, supra.   In
that case it is said: "The work at which McCormick was
employed was not a dangerous work; the place was not
one that could be regarded as in any sense dan-
gerous.   The materials were those in common use
for the purpose for which they were used by the de-
fendant.   The work was done under the supervision of a
competent painter.   The accident happening under such
circumstances was without the range of ordinary experi-
ence, and one, therefore, against which the measure of
due care from the employer could not protect the serv-
ant.   To hold otherwise would be to disregard the well-
settled law upon the subject and to make the employer
an insurer of the safety of his employee."   We are of
opinion that the case was correctly ruled in the court be-
low, and the judgment is accordingly affirmed.